IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

DR. MONROE R. PARKER, JR. and
DR. WARTHELL B. ILES,

      Plaintiffs,

v.                               CIVIL ACTION NO. 4:04cv79

NORTH CAROLINA AGRICULTURAL
FINANCE AUTHORITY,

      Defendant.

---

WARTHELL B. ILES,

      Debtor.

WARTHELL B. ILES,

      Appellant,

                               CIVIL ACTION NO. 4:05cv11

v.

CENDANT MORTGAGE CORPORATION
and
NORTH CAROLINA AGRICULTURAL
FINANCE AUTHORITY,

      Appellees.

## OPINION

Since defaulting on a business loan in 2002, plaintiff Warthell B. Iles ("Dr. Iles"), has waged a litigation war against her lenders, defendant/appellee North Carolina Agricultural

Finance Authority ("NCAFA") and appellee Cendant Mortgage Company ("Cendant Mortgage"). Dr. Iles filed bankruptcy three times to delay the foreclosure sale of two properties that she pledged as collateral for the loan. She fraudulently deeded one of the pledged properties to a cohort as means of giving the cohort standing to join her as a plaintiff in unsuccessful litigation against NCAFA in North Carolina state court. Dr. Iles and the fraudulently joined plaintiff subsequently filed two suits in Virginia in an effort to relitigate the claims that the North Carolina court had dismissed. Finally, after the United States Bankruptcy Court for the Eastern District of Virginia gave the lenders permission to foreclose on her personal residence, Dr. Iles retained an attorney and reached a global settlement. Dr. Iles appeared personally before this Court and the Bankruptcy Court to affirm the settlement and request dismissal of her cases. In accordance with the parties' Settlement Agreement, the lenders cancelled the planned foreclosure sale.

Approximately two weeks after her court appearances, Dr. Iles repudiated the global settlement by moving pro se to set it aside and by appealing pro se the voluntary dismissal of her bankruptcy case. For the reasons discussed below, the Court **DENIES** Plaintiff's Motion to Set Aside the Settlement Agreement (Docket No. 14) filed in Civil Action No. 4:04cv79 and **DISMISSES** for lack of jurisdiction the appeal filed in her bankruptcy case

(Civil Action No. 4:05cv11). The Court **ORDERS** Dr. Iles to pay the reasonable attorneys' fees and disbursements that defendants/appellees have incurred in responding to her vexatious motion and appeal.

## I. Facts and Procedural History

Dr. Iles was the owner of an approximately 105-acre farm located in Edgecombe County, North Carolina. In 1997, NCAFA loaned her $70,000 to construct poultry houses on the farm. The loan was secured by the farm, the newly constructed poultry houses, and Dr. Iles' personal residence in Hampton, Virginia. When Dr. Iles defaulted on the loan in 2002, NCAFA noticed a foreclosure sale of the farm.

To delay the foreclosure, Dr. Iles filed on July 26, 2002 a Voluntary Chapter 13 Petition ("Bankruptcy Case A") in the United States Bankruptcy Court for the Eastern District of North Carolina, Wilson Division. (Case No. 02-06183-8-JRL). After receiving relief from the automatic stay, NCAFA foreclosed on the farm and was the successful bidder at the foreclosure sale. A Trustee's Deed, which was executed on March 10, 2003, transferred to NCAFA all right, title, and interest in the farm.

Ten days after the foreclosure sale, the North Carolina Bankruptcy Court dismissed Bankruptcy Case A. In an Order dated February 24, 2003, the Court explained the dismissal by citing

Dr. Iles' failure to "comply with the provisions of the confirmed Chapter 13 plan or to obtain confirmation of a plan." On the very day that Bankruptcy Case A was dismissed, Dr. Iles filed a second Voluntary Chapter 13 Petition ("Bankruptcy Case B") in the same court. (Case No. 03-01712-8-JRL). By Order dated May 22, 2003, the North Carolina Bankruptcy Court lifted the automatic stay to permit NCAFA to remove Dr. Iles' personalty and take possession of the farm pursuant to state law. At Dr. Iles' request, the North Carolina Bankruptcy Court dismissed Bankruptcy Case B on July 1, 2003.

As noted above, the foreclosure Trustee transferred ownership of the farm to NCAFA on March 10, 2003. Approximately two months later, Dr. Iles executed a Quitclaim Deed,[1] which purported to transfer all of her right, title, and interest (if any) in the farm to Monroe R. Parker, Jr. ("Dr. Parker"). The admitted purpose of this transfer was to confer upon Dr. Parker facially plausible standing to sue over alleged improprieties in the foreclosure sale and subsequent Trustee's Deed.

On June 9, 2003, Dr. Parker and Dr. Iles filed a pro se Complaint against NCAFA in the General Court of Justice, Superior Court Division for Edgecombe County, North Carolina. The Complaint asked the court to void the foreclosure sale and

---

[1] The Quitclaim Deed was executed May 22, 2003 -- the same day as the North Carolina Bankruptcy Court's Order allowing NCAFA to take possession of the farm.

4

requested $5,000,000 in damages. The North Carolina Superior Court dismissed the Complaint with prejudice by Order dated August 19, 2003. The North Carolina Court of Appeals dismissed Dr. Iles' and Dr. Parker's subsequent appeal for failure to follow appellate procedure.

As noted above, Dr. Iles pledged her residence in Hampton, Virginia to secure the poultry house loan. NCAFA threatened in late 2003 to foreclose on her Hampton residence to recover the amounts still owed after application of proceeds from the farm foreclosure sale. To block this foreclosure, Dr. Iles filed, on December 1, 2003, in the Circuit Court for the City of Hampton, Virginia a pro se pleading entitled "Complaint to Enjoin a Foreclosure Sale Based Upon Baseless Allegations by Defendants." The Bill of Complaint named NCAFA as the sole defendant and sought both injunctive relief and $2,500,000 in damages.

On December 8, 2003, the Hampton Circuit Court denied Dr. Iles' motion to enjoin the foreclosure of her Hampton residence. Two days later, Dr. Iles, acting pro se, filed yet another Voluntary Chapter 13 Petition ("Bankruptcy Case C") to block the foreclosure sale. This bankruptcy petition was filed in the United States Bankruptcy Court for the Eastern District of Virginia, Newport News Division. NCAFA subsequently removed the Hampton Circuit Court action to the Eastern District of Virginia Bankruptcy Court as a proceeding ancillary to Bankruptcy Case C.

The Bankruptcy Court then transferred the ancillary action to this Court because Dr. Iles demanded a trial by jury.

Dr. Parker and Dr. Iles filed their pro se Complaint in Civil Action No. 4:04cv79 on June 21, 2004. The federal Complaint, like the state Complaint, seeks to void the North Carolina foreclosure sale, but plaintiffs increased the ad damnum to $25,000,000.

Bankruptcy Case C stalled the foreclosure of Dr. Iles' Hampton residence for almost one year. However, the effectiveness of this tactic ended on November 30, 2004 when the Bankruptcy Court granted NCAFA in rem relief from stay as to Dr. Iles' Hampton residence. Faced with the certain loss of her home, Dr. Iles retained counsel and settled with NCAFA and the first lienholder on the residence, Cendant Mortgage.

In a Settlement Agreement dated January 14, 2005, Dr. Iles agreed to a structured payment arrangement and further agreed to dismiss with prejudice Civil Action No. 4:04cv79 and Bankruptcy Case C. NCAFA agreed to reinstate Dr. Iles' loan and defer her arrearages. Cendant Mortgage also agreed to reinstate its loan to Dr. Iles. Additionally, both Cendant Mortgage and NCAFA agreed to defer the costs and attorneys' fees they had incurred as a result of Dr. Iles' defaults.

To partially fulfill her part of the bargain, Dr. Iles and her counsel appeared before both the Bankruptcy Court and this

Court to request dismissal of her claims. An Order of Voluntary Dismissal was entered in Civil Action No. 4:04cv79 on January 14, 2005.[2] (Docket No. 10). Bankruptcy Case C was dismissed on the same day upon the request of all parties.

A little over two weeks later, on January 31, 2005, Dr. Iles filed a pro se Motion to Set Aside the Settlement Agreement. (Docket No. 14). Dr. Iles asserted that she signed the Settlement Agreement "under threats and duress, in that her attorneys communicated to her, that if she did not sign, NCAFA would foreclose on her Hampton residence." (Docket No. 14 at 2). Additionally, Dr. Iles claimed that her attorneys advised her "that if Parker did not sign the agreement, he would be arrested and charged with the unauthorized practice of law." (Docket No. 14 at 2). On the same day that she moved to set aside the Settlement Agreement (i.e., January 31, 2005), Dr. Iles appealed to this Court the voluntary dismissal of Bankruptcy Case C.

In an effort to resolve both the Motion to Set Aside and the appeal of Bankruptcy Case C, the Court instructed counsel for Cendant Mortgage to arrange a mutually convenient hearing date and time. (Tr. at 16). Dr. Iles refused to provide counsel with any available dates, stating that she would undergo surgery on

---

[2] The settlement of Dr. Iles' claims left only Dr. Parker as the plaintiff in Civil Action No. 4:04cv79. By Order dated March 31, 2005, the Court dismissed Dr. Parker's Complaint with prejudice based on the previous dismissal of the same claims in the North Carolina action. (Docket No. 23).

7

May 31, 2005 and could not commit to any dates thereafter. In an effort to accommodate Dr. Iles' surgery, while still serving the needs of the Court's docket, the Court instructed counsel for Cendant Mortgage to notice Dr. Iles for a hearing on a date prior to her surgery. (Tr. at 16-18). The hearing was set for May 27, 2005 at 3:00 p.m. in the Walter E. Hoffman United States Courthouse in Norfolk, Virginia.

Upon receiving written notice of the May 27 hearing, Dr. Iles telephoned the Court's judicial assistant, Cathy Eichelbaum. Dr. Iles angrily stated that she would be unable to attend the hearing because she was actually going to have surgery on May 27, 2005. (Tr. at 18). Throughout the conversation, Dr. Iles repeatedly asserted that she would be unable to come to Norfolk on May 27. As the conversation continued, Dr. Iles switched her story to claim that her surgery was on May 31, 2005, but that she would be preparing for her surgery on May 27, 2005. (Tr. at 18). Dr. Iles also claimed in her conversation with Ms. Eichelbaum that she was in the process of obtaining counsel; however, she refused to name the prospective attorney. (Tr. at 18). At the conclusion of the conversation, Ms. Eichelbaum informed Dr. Iles that she needed to attend the hearing. (Tr. at 18-19).

On the morning of May 27, a person identifying herself as the secretary to Leron Gilchrist, Esquire, telephoned Ms. Eichelbaum seeking information about the status of the present

cases. The caller stated that Dr. Iles was present in Mr. Gilchrist's downtown Norfolk office with a "suitcase full of files," requesting that Mr. Gilchrist represent her in the hearing that afternoon. (Tr. at 19).

The hearing took place as scheduled at 3:00 p.m. on May 27, 2005. At the hearing, Jennifer Jo West, Esquire, appeared on behalf of defendant NCAFA. Jeffery L. Marks, Esquire, appeared on behalf of Cendant Mortgage. The pro se plaintiff/appellant, Dr. Iles, failed to appear at the hearing. The Official Court Reporter was Sharon Borden.

## II.  Analysis

### A.  Motion to Set Aside the Settlement Agreement

#### 1.   Rule 60(b)

To obtain relief from a final judgment under Fed. R. Civ. P. 60(b), Dr. Iles must satisfy four threshold requirements: (1) that her motion is timely; (2) that a meritorious claim exists; (3) that NCAFA will not be unfairly prejudiced by having the judgment set aside; and (4) that "exceptional circumstances" exist. Dowell v. State Farm Fire & Cas. Ins. Co., 993 F.2d 46, 48 (4th Cir. 1993); Boyd v. Commonwealth, 905 F.2d 764, 769 (4th Cir. 1990); Compton v. Alton Steamship Co., 608 F.2d 96, 102 (4th Cir. 1979). If these threshold requirements are met, the Court can relieve Dr. Iles from the Order of Dismissal for one of the

9

following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)
> (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
>
> . . . .
>
> (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b); see also Park Corp. v. Lexington Ins. Co., 812 F.2d 894, 896 (4th Cir. 1987).

Dr. Iles cannot meet the threshold requirements of Rule 60(b) because she does not have a meritorious claim against NCAFA. Park Corp., 812 F.2d at 896. When Dr. Iles voluntarily dismissed her claims in Civil Action No. 4:04cv79, Dr. Parker was left as the sole plaintiff. Dr. Parker's claims were the same as Dr. Iles' claims. In fact, to the extent he has a claim at all, it is only because he received a Quitclaim Deed to Dr. Iles' North Carolina farm three months after it was sold at foreclosure. Dr. Parker's claims were dismissed with prejudice because he and Dr. Iles already had litigated those claims unsuccessfully in North Carolina state court. (Docket No. 23). Had Dr. Iles not settled this action, her claims also would have been dismissed with prejudice. Dr. Iles therefore has no meritorious claims to pursue.

Dr. Iles' Rule 60(b) motion also must be denied on threshold

grounds because NCAFA and Cendant Mortgage would suffer unfair prejudice by setting aside the Settlement Agreement. See Dowell, 993 F.2d at 48; Park Corp., 812 F.2d at 896. Both defendants cancelled the foreclosure sale of Dr. Iles' Hampton residence to implement the parties' Settlement Agreement. Additionally, NCAFA has already litigated several times the issues which Dr. Iles seeks to re-open. Further litigation of Dr. Iles' futile claims will work a significant financial detriment on NCAFA and Cendant Mortgage.

Relief granted under Rule 60(b) is an "extraordinary" remedy and "is only to be used upon a showing of exceptional circumstances." Boyd, 905 F.2d at 769 (quoting Compton, 608 F.2d at 102). Since granting Dr. Iles' Motion to Set Aside the Settlement Agreement would leave her with no meritorious claims against NCAFA and would unfairly prejudice her secured lenders, Dr. Iles' motion does not satisfy the threshold requirements for relief under Rule 60(b). See Dowell, 993 F.2d at 48; Werner v. Carbo, 731 F.2d 204, 207 (4th Cir. 1984); Park Corp., 812 F.2d at 896.

### 2. Common Law Grounds To Set Aside

In Virginia, "[o]nce a competent party makes a settlement and acts affirmatively to enter into such settlement, her second thoughts at a later time upon the wisdom of the settlement do not

constitute good cause for setting it aside." Snyder-Falkinham v. Stockburger, 249 Va. 376, 385, 457 S.E.2d 36, 41 (1995). Dr. Iles seeks to evade this general rule by arguing that she signed the Settlement Agreement "under threats and duress, in that her attorneys communicated to her, that if she did not sign, NCAFA would foreclose on her Hampton residence."[3] (Docket No. 14 at 2).

The statements cited by Dr. Iles constitute sound legal advice rather than duress. Once the Bankruptcy Court lifted its stay, Dr. Iles' residence surely would have been foreclosed upon. That is what happens when one pledges real property to secure a loan and then defaults on the loan. Being advised of the natural and probable consequences of one's actions is not duress. Goode v. Burke Town Plaza, Inc., 246 Va. 407, 411, 436 S.E.2d 450, 452-53 (1993) ("Duress exists when a [person] commits a wrongful act

---

[3] Dr. Iles cannot claim that "threats" that her attorneys allegedly made to Dr. Parker excuse her from honoring the Settlement Agreement that she signed. "The general rule is that a contract cannot be avoided because an arrest or prosecution was threatened a third party. In other words the law does not regard the person under duress who enters into a contract to relieve another person and not himself." Ellis v. The Peoples Nat'l Bank of Manassas, 166 Va. 389, 393, 186 S.E. 9, 11 (1936). An exception exists to this general rule where the third party under duress is a "very near relative." Id.; see Hannon v. Hannon, 426 F.2d 771, 772 (4th Cir. 1970)(holding wife's entering settlement agreement only to spare her husband embarrassment and ill effects of protracted litigation did not support finding of duress). The exception does not apply to the present matter as there is no evidence that Dr. Parker is a near relative of Dr. Iles. Moreover, the threats of criminal prosecution were made by Dr. Iles' counsel rather than NCAFA.

12

. . . thereby coercing [another's] consent. Because the application of economic pressure by threatening to enforce a legal right is not a wrongful act, it cannot constitute duress.").

Dr. Iles' effort to repudiate the settlement is also barred by the fact that the alleged "threats" were made by her attorneys. A "litigant cannot later attack the integrity of the settlement on the basis of inadequate representation by the litigant's attorney. In such cases, any remaining dispute is purely between the party and his attorney." Petty v. The Timken Corp., 849 F.2d 130, 133 (4th Cir. 1988); Napier v. Chesapeake and Ohio Ry. Co., 582 F.2d 1344, 1346 (4th Cir. 1978).

B.  Bankruptcy Appeal

"Under Bankruptcy Rule 8002(a), an appeal from a bankruptcy court decision must be filed within 10 calendar days of the date of entry of the order at issue." In re Kmart Corp., 315 B.R. 718, 721 (N.D. Ill. 2004). If the appeal is filed more than ten (10) days after the entry of the order, the district court has no jurisdiction over the matter. Smith v. Dairymen, Inc., 790 F.2d 1107, 1109 (4th Cir. 1986); see In re Amurice, 69 F.3d 830, 832 (7th Cir. 1995) ("[If a] notice of appeal to the district court was jurisdictionally late . . . the bankruptcy judge's orders were outside the district judge's power of review."); Stelpflug

v. Fed. Land Bank of St. Paul, 790 F.2d 47, 49 (7th Cir. 1986) ("[R]equirement of a timely notice of appeal is 'mandatory and jurisdictional.'").

Dr. Iles did not file her Notice of Appeal with the Bankruptcy Court until January 31, 2005 -- a full 17 days after the Bankruptcy Court entered its Dismissal Order. This Court therefore lacks jurisdiction to hear the appeal.

C. Sanctions

It is within a court's inherent authority and discretion to sanction a litigant for "bad faith" conduct. See Chambers v. NASCO, Inc., 501 U.S. 32, 35, 44-46 (1991); United States v. Shaffer, 11 F.3d 450, 462 (4th Cir. 1993). In this context, bad faith refers to "deliberate misconduct." Zaczek v. Fauquier County, 764 F. Supp. 1071, 1077 (E.D. Va. 1991); see Roadway Express v. Piper, 447 U.S. 752, 766 (1980). If a court elects to impose sanctions under its inherent authority, it must specifically explain how the offending party engaged in deliberate misconduct. See Hensley v. Alcon Labs., Inc., 277 F.3d 535, 543 (4th Cir. 2002); Sterling Energy Ltd. v. Friendly Nat'l Bank, 744 F.2d 1433, 1437 (10th Cir. 1984); United States v. Standard Oil Co., 603 F.2d 100, 103 (9th Cir. 1979). A court may use its inherent authority to sanction a party for conduct which also could be sanctioned under a specific statute or rule,

but ordinarily should rely on the statute or rule if it provides an adequate sanction. See Chambers, 501 U.S. at 50.

Dr. Iles' repudiation of the Settlement Agreement that she had affirmed before two judges only weeks earlier was a bad faith, vindictive act designed to harass her secured lenders, NCAFA and Cendant Mortgage. As discussed above, Dr. Iles had no viable ground for setting aside the settlement. Moreover, she knew from her co-plaintiff's experience that the claims asserted in Civil Action No. 4:04cv79 ultimately would be dismissed on res judicata grounds.

Dr. Iles' bad faith is demonstrated further by her conduct outside of the courtroom. She initially refused to provide dates for a hearing on her Motion To Set Aside and her bankruptcy appeal. She then lied to the Court, claiming in shifting stories that she was unavailable for the hearing scheduled on May 27, 2005. She refused to attend the hearing even though she was in Norfolk on the morning of the hearing to consult with (but apparently not retain) new counsel.

While Dr. Iles' Motion To Set Aside and her bankruptcy appeal are frivolous, the full measure of her vexatious conduct cannot be addressed under Rule 11 alone. That Rule only reaches a "pleading, written motion, or other paper." Fed. R. Civ. P. 11(b). While Dr. Iles' written submissions certainly violated Rule 11, she also committed a fraud upon the Court and her

opponents by disrupting the litigation process and by affirmatively lying to the Court in an effort to prevent a ruling on her motions. Where, as here, the Federal Rules and applicable statutes are insufficient to reach the full measure of a litigant's bad faith conduct, the Court is authorized to proceed under its inherent power to police itself. See Chambers, 501 U.S. at 48-49.

In order to maintain control of the Court's Docket and to reimburse NCAFA and Cendant Mortgage for their costs in contending with Dr. Iles' frivolous motion and appeal, the Court **SANCTIONS** Dr. Iles sua sponte.[4] Dr. Iles shall pay the reasonable attorneys' fees and disbursements incurred by NCAFA and Cendant Mortgage in responding to her Motion to Set Aside the Settlement Agreement and in moving to dismiss her bankruptcy appeal. The affidavit regarding attorneys' fees submitted by NCAFA's counsel represents that NCAFA incurred attorneys' fees and disbursements of $4,446. (Civil Action No. 4:04cv79, Docket No. 29). The Summary of Services submitted by Cendant Mortgage's counsel represents that Cendant Mortgage incurred attorneys' fees and disbursements of $9,965.62. (Civil Action No. 4:05cv11, Docket No. 10).

The Court **FINDS** that the fee applications were prepared

---

[4] Sua sponte awards of sanctions are permissible. Link v. Wabash R.R., 370 U.S. 626, 632 (1962).

carefully and substantiated by the submission of detailed billing. The hourly rates charged by counsel ($195 to $290) reflect the prevailing rates in the Hampton Roads, Virginia area for experienced bankruptcy and commercial litigation counsel. Finally, the fees and disbursements incurred by NCAFA and Cendant Mortgage accurately reflect the costs of similar matters before the Court. See Convey Compliance Sys., Inc. v. 1099 Pro, Inc., No. 04-2335, 2006 U.S. App. LEXIS 7794, at *17 (4th Cir. Mar. 30, 2006)(identifying factors to consider).

The Court further **FINDS** that the amount of the awarded fees and disbursements is reasonable in comparison to Dr. Iles' financial circumstances. Dr. Iles filed a Summary of Schedules in Bankruptcy Case C on December 18, 2003 certifying the following: total assets of $695,860; total liabilities of $203,000; monthly expenditures of $3,144; and monthly income of $3,900. The Court finds that its award of fees and disbursements is reasonable in light of plaintiff's sworn financial circumstances. See Bass v. Dupont de Nemours & Co., 324 F.3d 761, 766 (4th Cir. 2003) (upholding award of $3,627.26 in costs even though it equaled half plaintiff's disposable income).

### III. Conclusion

For the reasons set forth above, the Court issued an Order on March 31, 2006 (Docket No. 32) which **DENIED** Dr. Iles' Motion

to Set Aside Settlement Agreement in Civil Action No. 4:04cv79 and a second Order of the same date **DISMISSING** Dr. Iles' bankruptcy appeal (Civil Action No. 4:05cv11, Docket No. 13). Each Order directed plaintiff Dr. Warthell B. Iles to pay defendants' reasonable attorneys' fees and disbursements.

Dr. Iles is **ADVISED** that she may appeal the above-referenced Orders to the United States Court of Appeals for the Fourth Circuit by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia, 23510. The written notice of appeal must be received by the Clerk of this Court within thirty (30) days <u>from the date of the Orders</u>. Failure to file timely notices of appeal may result in the loss of the right to an appeal. <u>See</u> Fed. R. App. P. 3 & 4.

The Clerk is **DIRECTED** to mail a copy of this Order to plaintiff and to all counsel of record.

**IT IS SO ORDERED.**

_____
WALTER D. KELLEY, JR.
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
April 13, 2006

A TRUE COPY, TESTE:
CLERK, U.S. DISTRICT COURT

18  BY _____
DEPUTY CLERK